## Knode *v.* Knode, Appellant.

Argued April 23, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Samuel. G. Wagner,* with him *Wagner & Wagner, Harry Shapera* and *William M. Kahanowitz,* for appellant.

*James Gregg,* with him *Louis E. Sensenich* and *Portser, Gregg & McConnell,* for appellee.

OPINION BY HIRT, J., July 19, 1946:

Upon sufficient evidence of the misconduct of respondent, supporting the charges of indignities and desertion, the lower court entered a decree of divorce in this action on October 2, 1944. Libellant's residence then was in Westmoreland County where he had lived for

about six years. Throughout the period, between April 22, 1944, when the libel was filed, and October 2, 1944, the date of the final decree, respondent lived somewhere in Pittsburgh in Allegheny County but her whereabouts was unknown to libellant. She did not have personal service, either of the subpœna or the master's notice and did not know of the action until November 14, 1944. On December 15, 1944, after term time, she petitioned the court to open the decree and let her into a defense, on a charge of fraud in failing to give her personal notice of the action. The discharge of the rule granted on her petition gives rise to this appeal. On the face of the record, the proceedings are regular. After respondent could not be located for personal service, the pluries subpœna was served by publication; and the court rules of Westmoreland County were complied with as to notice of the master's hearing.

Service in a divorce suit by publication (under the Statute, the Act of May 2, 1929, P. L. 1237, §29, 23 PS 29) after personal service has failed, is due process. And "in the absence of fraud on the respondent, the courts will not, where the record on its face shows residence, open the decree when the term has passed, and, unless the equities are with respondent, will not do so in term time": *Nixon v. Nixon,* 329 Pa. 256, 266, 198 A. 154. Even though we accept respondent's testimony at face value, we cannot charge libellant with fraud in proceeding with the action as he did. Moreover there is nothing in the record which impels us to open the case in the interests of the Commonwealth, an unnamed party to the action. *Bonomo v. Bonomo,* 123 Pa. Superior Ct. 451, 187 A. 222.

The parties were married in 1918 in Harrisburg where they lived until they moved to Pittsburgh in 1923. They later bought a home near New Alexandria in Westmoreland County and were living there it the time of the separation in 1938. After leaving the libellant, respondent brought an action for support in Allegheny

County, resulting in an order against him of $80, later increased to $100 per month. He complied with this order, as he was obliged to do, until the date of the decree in this case, by payments to the probation officer of the county court. The support order, however, did not foreclose libellant's right to a subsequent decree of divorce, though upon grounds which would have defeated the claim for support if they had been then advanced. *Com. ex rel. DiDonato v. DiDonato*, 156 Pa. Superior Ct. 385, 389, 40 A. 2d 892. Cf. *Com. ex rel. Esenwein v. Esenwein*, 348 Pa. 455, 35 A. 2d 335.

Libellant before starting this action, made every reasonable effort to locate his wife for service of the subpœna. The wife had either called in person or sent some one to the probation office for the support money as paid, but the probation officer did not know where she could be reached and her only residence disclosed by the court record in the support proceeding was a Harrisburg address where she had not lived since 1942. Libellant made a trip to Harrisburg in 1943 in an attempt to locate her and his investigation indicated that she then was living somewhere in Pittsburgh. In the same year libellant called her attorney, Harry Shapera, in an effort to ascertain her then whereabouts, and in no uncertain language was refused any information. Libellant's attorney had the same experience in his effort to get her address from Shapera. The result of these inquiries relieved libellant from renewing the attempt to get this information from Shapera at a later date. On April 3, 1944, libellant wrote the respondent at 1103 Brushton Ave., Wilkinsburg, Pa. (on information that mail at that address would be forwarded to her), asking for the place of her residence or where she could be found. She replied by letter, dated April 8, 1944: "Arrived in Pittsburgh Friday—and picked up your note. From information received, any emergency rising probability [sic] would hardly concern me that I can see, at least not in a beneficial capacity. However, for your informa-

tion, which you inquired for, be advised—I do not have any such luxury, as a *residence*. I can be contacted at 413-Colton St., Millvale Pa. (MI. 5133W). Pgh-9, zone c/o L. C. Seigler. Or 1103-Brushton Ave., c/o C. H. Simon. (Ch. 4526)." Fourteen days later libellant filed his libel in divorce. But when the officer in an attempt to serve the subpœna, went to 1103 Brushton Avenue, Mrs. Simon disclaimed knowledge of respondent's whereabouts. Mrs. Seigler at 413 Colton Street in Millvale (wife of respondent's son by a former alliance) told the officer that she did not know respondent's address but believed that she was living in Harrisburg. Respondent, on the rule to open, testified that she was then living at 515 Sheridan Avenue in Pittsburgh and that this was her mail address, although she had been careful not to disclose the fact in her letter of April 8, 1944. Both Mrs. Simon and Mrs. Seigler, at the only addresses disclosed by her letter, then knew where respondent could be found but refused the information, undoubtedly at respondent's suggestion.

The undisputed proofs indicate that libellant exhausted every available source of information in a bona fide effort to locate respondent for service of the subpœna on her. Throughout the separation he was entitled to this information, to check her conduct and changed circumstances which might have affected his liability to support her. She has not advanced a single reason for withholding the information from him. We agree with the lower court that her conduct charges her with a purposeful attempt at concealment. A proceeding to open a judgment is ruled by equitable principles. *Nixon v. Nixon*, supra. Since respondent, deliberately, for reasons of her own, concealed her whereabouts from libellant, thus making personal service of the subpœna impossible, her predicament is of her own making and she is in no position to complain.

Order affirmed at respondent's costs.