Masciulli, Appellant, v. Masciulli.

Argued March 13, 1961. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*John J. Krafsig*, for appellant.

*Bruce E. Cooper*, for appellee.

Opinion by Wright, J., April 13, 1961:

On May 16, 1958, in an action for divorce a.v.m. on the ground of indignities to the person instituted by Giocondino J. Masciulli, Jr. against Sydney E. Masciulli, the Court of Common Pleas of Dauphin County granted the plaintiff-husband a final decree. On September 5, 1958, the wife petitioned for a rule to show cause why the decree should not be vacated. This petition alleged that the husband had intentionally withheld from his wife notice of the pendency of the divorce action and of the Master's hearing, wherefore the decree in divorce was fraudulently obtained. A rule was granted, to which the husband filed an answer. After taking testimony, the court below, on August 2, 1960, entered an order opening the decree in divorce, and remanding the case to the Master "for the purpose of taking the testimony de novo after giving due and lawful notice of the time and place of the

Master's hearing". This appeal by the husband followed.

The parties were married on September 5, 1953, and thereafter lived at 305 South 17th Street in the City of Harrisburg. No children were born of their union. The wife left the common habitation on December 6, 1957. She returned on December 21, 1957. She left again on February 2, 1958, and did not return. The complaint in divorce was filed on December 17, 1957. It was returned by the Sheriff "not found". Service by publication was directed, and notices were published in the Middletown Journal and the Dauphin County Reporter. Notice of the Master's hearing was sent by registered mail to the wife at 305 South 17th Street and was returned "moved—address unknown". The wife did not appear at the hearing, nor was she represented by counsel. The husband testified before the Master, April 7, 1958, as follows: "Q. Do you know where she is now? A. I think she is in Harrisburg, either at her mother's or her girl friend's. Q. But you don't know how to locate her? A. No, I don't".

At the hearing on the rule, November 5, 1959, the wife testified that she was living with her husband from the latter part of December, 1957, to the early part of February, 1958; that on February 12, 1958, and several times during the following week, her husband called her on the telephone at the home of Mr. and Mrs. Clarence Taylor, 8151 Chamber Hill, Harrisburg, where she was temporarily residing; that she then moved to the residence of her mother, Mrs. Catherine Fox, 3906 Jonestown Road, Harrisburg; that her husband "came over to see me" at that address; that they thereafter went driving on several occasions and conversed over the telephone "just about every evening" until the end of May, 1958; that she was employed at the Harrisburg East Diner during March,

1958, and her husband took her to work "quite a few times"; that she saw him in April "on an average of twice a week" and talked with him by telephone "definitely once a night, sometimes twice a night"; that their meetings and telephone conversations continued, somewhat less frequently, throughout the month of May, 1958; that at no time during this whole period was there any mention of a divorce; and that she did not learn of the decree until two weeks after it had been entered.

Although the wife's testimony was somewhat weakened by cross-examination, and was contradicted in certain aspects by the husband, she was corroborated in a number of respects by the testimony of her mother, Mrs. Catherine Fox, by the testimony of Alice Gaylor, a waitress at the Harrisburg East Diner, and by the testimony of Clarence Taylor, and his wife, Lillian. Our examination of this record in its entirety leads us to the conclusion that it amply warrants the following statement in the opinion below: "The Master's hearing was held April 7, 1958. Although the husband knew prior to that time that his wife was living at her mother's residence, he did not notify the Master of that fact . . . Even though the wife did not acquire a permanent residence after her second return from Florida, there is no credible evidence that at that time she sought to conceal her place of abode . . . In the circumstances, we feel that justice will be done to all parties if the wife's petition to vacate the Decree is treated as a petition to open the Decree and that the Master take the testimony de novo after giving notice to the defendant-wife".

A proceeding to open a divorce decree is equitable in nature, and the appellate court will not reverse an order entered in such a proceeding unless there has been a clear abuse of discretion: *Magistro v. Magistro,* 182 Pa. Superior Ct. 487, 127 A. 2d 758. And see

*Given v. Given,* 25 Pa. Superior Ct. 467. The intentional withholding of notice from the defendant in a divorce action constitutes extrinsic fraud which vitiates the decree: *Cortese v. Cortese,* 163 Pa. Superior Ct. 553, 63 A. 2d 420. The term extrinsic fraud means conduct by the prevailing party which has prevented a fair submission of the controversy: *Wisecup v. Wisecup,* 190 Pa. Superior Ct. 384, 154 A. 2d 332. See also *Willetts v. Willetts,* 96 Pa. Superior Ct. 198; *Carey v. Carey,* 121 Pa. Superior Ct. 251, 183 A. 371. It exists where, by reason of plaintiff's conduct, the defendant was not served with process, had no knowledge of the action, and was not represented at the trial: *Estok v. Estok,* 102 Pa. Superior Ct. 604, 157 A. 356. In such circumstances, there never has been a real contest in the hearing of the case: *Fleming v. Fleming,* 83 Pa. Superior Ct. 554. An excellent discussion of the entire subject appears in Freedman, Law of Marriage and Divorce, Second Edition, Chapter 46.

In addition to his primary contention that the record does not justify the order below, appellant asserts that he made every reasonable effort to locate his wife for service, but that she concealed her whereabouts. He thus attempts to rely on *Knode v. Knode,* 159 Pa. Superior Ct. 210, 48 A. 2d 151. However, the factual situation presented in the *Knode* case is manifestly different from that in the case at bar. While this wife may have at one time planned to conceal her whereabouts, as stated by the hearing judge, the truth is that she did not do so, and her husband was in constant contact with her. Not only did he know where she could be found, but also he gave to the Master an address at which he knew she could not be found.

Appellant also stresses the statement of the hearing judge that the wife was carrying on an illicit love affair, and that there was sufficient evidence to sus-

tain the charge of indignities. It is contended that the wife's petition was not presented in good faith because she did not allege that she had a good defense in the divorce action, citing *Taylor v. Taylor*, 52 Pa. Superior Ct. 388. It should be noted that, in the *Taylor* case, the wife had knowledge of the action, filed an answer, and received notice of the final rule. In the instant case, paragraph 13 of the wife's petition contains an averment that the "allegations upon which the divorce was granted were, to a large extent, untrue". In *Walton v. Walton*, 84 Pa. Superior Ct. 366, wherein the husband had deceived the Master as to his knowledge of the wife's address, it was held that it was not necessary for the wife to refute the charge in the divorce complaint. The following excerpt from the opinion in the *Walton* case is here pertinent:

"The case is not one in which the respondent is seeking to set aside a decree after a hearing or an opportunity to be heard. The imposition complained of was not only on the respondent, but on the court, and it is due to the just and orderly administration of justice that decrees be not obtained by the suppression of the truth, and this is especially true in proceedings in divorce in which a public as well as a private interest is involved. It was not necessary that the respondent in this proceeding refute the charge of divorce with such evidence as would have resulted in a dismissal of the libel. If she had been served with notice, or had appeared in the case and had then suffered a default, it would have been necessary in order to secure a rehearing that she exhibit a meritorious defense; but here there was no personal notice, no appearance, and no opportunity for defense. Her denial, as set forth in the petition, was therefore sufficient".

Appellant also cites *Zettlemoyer v. Zettlemoyer*, 79 Pa. Superior Ct. 405, and *Catts v. Catts*, 35 Pa. Superior Ct. 293, but neither of these cases is controlling.

In the *Zettlemoyer* case, the wife had notice in time to appeal, expressed indifference, and did nothing until after the husband's death. In the *Catts* case, the wife was also guilty of laches. Furthermore, there was no finding in that case that the husband had committed any fraud. Although appellant contends that there is technically no finding of extrinsic fraud in the instant case, the opinion below expressly states that the basis of the wife's petition is that the husband "intentionally withheld from his wife notice of the pendency of the divorce action and of the Master's hearing".

In brief, this record does not disclose any abuse of discretion. We agree with the learned hearing Judge that appellant's imposition upon his wife, upon the court, and upon the Commonwealth, an interested party in every divorce proceeding, was such as to fully justify the opening of the decree.

Order affirmed.