565 A.2d 1199

**Nicholas CACCAVO, Appellee,**

v.

**Donna M. CACCAVO, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 28, 1989.

Filed Nov. 6, 1989.

Reargument Denied Jan. 2, 1990.

John J. Garagozzo, Philadelphia, for appellant.

Gerald Schorr, Philadelphia, for appellee.

Before POPOVICH, JOHNSON and HESTER, JJ.

POPOVICH, Judge:

This case involves an appeal from the order [1] of the Court of Common Pleas of Philadelphia County finding the appellant (Donna M. Caccavo) in contempt and directing her to pay counsel fees to the appellee (Nicholas Caccavo). We reverse.

The record reveals that on November 21, 1984, Donna and Nicholas entered into a Property Settlement Agreement ("Agreement"). At Section 10A(3) of the Agreement, it reads in relevant part that:

Wife agrees to submit her income tax returns to Husband if she files separately, at his request or the request of his representative.

Because of the wife-appellant's failure to comply with the husband-appellee's numerous requests for her income tax returns, he filed a petition seeking to hold her in contempt for willfully failing to provide such documents for the years 1984–87. Additionally, the appellee sought counsel fees in connection with the contempt petition.

On October 25, 1988, a hearing was conducted to assess the appellee's petition. At that time, counsel for the appellee stated that Section 10A(3) was a "voluntary mechanism[ ] for the parties to keep tabs on each other's income for the purpose of child support." However, the efforts of counsel for the appellee, for a period of over 3½ years, to obtain the tax returns were fruitless. "At the time this [A]greement was entered, Mrs. Caccova's income ... was quite minimal, and [the appellee wanted] to confirm that [the appellant's] income [was] considerably higher at this time," so stated appellee's counsel.

1. The order appealed has been reduced to judgment.

It was the position of counsel for the appellant that the phrase in the Agreement "if she files separately" was vague because one could not decipher when it "starts or ends".

Counsel for the appellant claimed that only the 1987 tax return was in dispute because in 1988 his client would be filing jointly with her new husband so she "no longer files separately", and this rendered the "paragraph ... moot". Also, because the appellant filed for an increase in child support, the hearing to be held on October 1, 1988, before a hearing officer, then the appellee would be entitled to a disclosure of the appellant's financial status. The court disagreed and believed that the parties entered into a contract whereby the appellant obligated herself to submit her income tax returns to the appellee "at his request or the request of his representative". And, the fact that the language appeared under the contractual heading of "CHILD SUPPORT" did not detract from the appellant's obligation to comply with a request for income tax returns.

However, the appellant's counsel did not understand why 1984, 1985 and 1986 tax returns were relevant since they related to the determination of whether a modification of support would be appropriate. The support order had been changed on various occasions already by court order. Nonetheless, the trial court felt that:

> The issue [was] whether ... [the appellant] entered into a binding agreement for the settlement and dissolution of th[e] marriage. If that be so, [the appellee was] entitled to make the request.

It was the court's firm understanding that the appellee had a "right" to see the appellant's income tax returns as long as she was filing separately. The court refused to accept the appellant's argument that the language cited supra in Section 10A(3) was a "contingent" clause in that section. Instead, it ordered the appellant to turn over her tax returns for 1984 through 1987, within 30 days, and to pay the appellee's counsel fees of $579.60 within 90 days, for

acting to secure the requested documents. With the reduction of the order to judgment, this appeal followed.

The first issue to be addressed is one of whether the trial judge abused its discretion in finding the appellant to be in contempt for failing to comply with Section 10A(3) of the Agreement.

▪ Before addressing the merits of the issue raised, we find it prudent to decide whether the court below was vested with jurisdiction to hear the dispute.[2]

From our review of the applicable law on the subject, we hold that a more appropriate course for the husband-appellee to have taken, given that the Property Settlement Agreement was not merged into the June 3, 1985, decree of divorce (see appellee's brief at 2 & 3), would have been to pursue a breach of contract action in a civil suit at law or an equitable action seeking specific performance of the contract. See *McFadden v. McFadden*, 386 Pa.Super. 506, 510 n. 1, 563 A.2d 180, 182 n. 1 (1989); *Sonder v. Sonder*, 378 Pa.Super. 474, 493, 549 A.2d 155, 165 (1988) (en banc). Since the husband-appellee did not avail himself of either avenue, the court below was without jurisdiction to hear the matter in dispute and, as such, it should have dismissed the husband-appellee's request for relief. See *Sonder v. Sonder*, supra, 378 Pa.Super. at 494, 549 A.2d at 166.

Stated simply, the Property Settlement Agreement made no provision for its merger into the parties' divorce decree (neither the record before this Court nor the parties' briefs dispute this), and, consequently, the parties rejected the benefits of the provisions developed under the Divorce Code of 1980 and the divorce proceedings enunciated in the Civil Procedural Rules for contempt. See *Sonder v. Sonder*, supra. As a result, any proceedings attendant to the Property Settlement Agreement were governed by the law of contract, *id.*, and not an action for contempt.

2. In fact, an appellate court has an obligation to examine the question of subject matter jurisdiction *sua sponte*. *Turner v. May Corporation*, 285 Pa.Super. 241, 427 A.2d 203 (1981).

■ Nonetheless, because the facts at issue have been adequately developed by the parties at a court hearing (which has been the subject of briefs and an opinion by the court below), and there having been imposed a penalty upon the appellant in the form of counsel fees for failing to act in accordance with the terms of the Property Settlement Agreement, we will examine the merits of the matter framed for our review in the interest of judicial economy.

■ We begin, as did the court below, in conceding that in Pennsylvania a property settlement agreement between a husband and wife is governed by the law of contracts. See *Trumpp v. Trumpp*, 351 Pa.Super. 205, 505 A.2d 601 (1985). Hence, when the language of such an agreement is clear and unambiguous, the focus of the interpretation must be upon the terms as manifestly expressed, rather than as silently intended. See *Stewart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982).

We disagree, however, with the trial court as to its evaluation of the Agreement, specifically Section 10A(3), as read as a whole and in a common sense fashion. The entire Section in question provides as follows:

10. CHILD SUPPORT:

A. Husband agrees to pay to Wife, commencing October 4, 1984, the sum of $200 every two weeks, as he gets paid, as support for Marc [minor child], until the first to happen of the following events:

(1) Death of Husband;

(2) Death of Wife (in which case Husband assumes all responsibility and support for Marc);

(3) Wife has just begun employment as a real estate broker and essentially has no income. The parties recognize that wife has a responsibility to contribute to Marc's support and that Husband should not bear the sole financial burden. Therefore, the parties agree to modify child support sum reflecting Wife's earnings or earning capacity and further agree that *Brown v. Hall*, and *Millstein v. Millstein* shall not be applicable herein

as regard non-modificability, downward, where the parties have originally agreed to a child support sum. *Wife agrees to submit here income tax returns to Husband if she files separately, at his request or the request of his representative. In the event that Husband feels a modification is appropriate, he shall forthwith notify Wife, and the parties shall proceed to renegotiate.* If they cannot agree on a new child support sum within two weeks of the notice, they agree to submit it to an appropriate Court.

(4) It is clearly understood that the child support amounts shall not change by reason of the remarriage or cohabitation of Wife (subject to subparagraph [3] above);

(5) It is clearly understood that all support by Husband shall cease when Marc reaches eighteen (18) years of age or marries, whichever event sooner occurs.

B. In the event that Marc's physical custody changes to Husband, the support amount hereunder shall be promptly renegotiated between Husband and Wife, in light of all the facts and circumstances.

C. The support payments hereunder are child support and as such are not deductible to Husband not taxable to Wife.

D.... (Emphasis added)

Moreover, in Section II, captioned "INCOME TAX RETURNS", the parties made provisions for the filing of a joint tax return if either had remarried as of December 31, 1984.

The whole tone of Section 10, when given its ordinary meaning, was to afford the parties a framework within which to calculate the amount and duration of child support payments. For example, both parties acknowledged that a "joint" obligation existed to provide for their son's support with the verbiage that:

The parties recognize that Wife has a responsibility to contribute to Marc's support and that Husband should not bear the sole financial burden.

Toward that end, the language seeking the submission of tax returns by the appellant-wife, at the appellee-husband's request, is found by this Court to be *linked* to the appellee-husband's belief that "a modification is appropriate" in the then existing order of support. In other words, a monitoring of the appellant-wife's income could occur (if a modification in the child's support payments would be sought by the appellee-husband) with a scrutiny of the appellant-wife's earnings or earning capacity by examination of her income tax return(s), provided she continued to file "separately" and not jointly. As stated most aptly by counsel for the appellant at the contempt hearing on this point:

> ... as I interpret [the Agreement], the whole language[— "Wife agrees to submit her income tax returns to Husband if she files separately, at his request or the request of his representative"—]hinges on the support issue. It is under Paragraph 10, under child support. It is not under a separate heading for disclosure of information or tax returns, or something to that effect. It is solely under the provision for child support, and, as I understand it and as I read it, the tax returns were to be requested and exchanged for the purpose of reviewing it for child support. So 1984, 1985, and 1986 are not an issue now because the child support has been modified by the parties and by the Court on previous occasions.

> \*       \*       \*       \*       \*       \*

> ... the whole burden of producing the tax return is for the purpose of determining what the child support should be. I think that we are in 1988, and Your Honor, I will agree in 1984 if we came before Your Honor, we would have to provide 1984. The same would apply for 1985.

The trial court's conclusion that the appellee-husband has an absolute right[3] to see his appellant-wife's income tax returns by merely requesting the same, without the request

**3.** The trial court stated it this way:
The difference in the mind of this Court ... is ... there was an agreement between the parties that contained a provision where [the appellant-wife] was duty bound to, in fact, produce such things. That duty is not removed.

being associated with, as written in the Agreement at Section 10A(3), "th[e] Husband feel[ing] a modification [in the child support] is appropriate", does violence to the clear language of the Agreement conditioning securement of such tax returns on a "belief" on the part of the appellee-husband that a "change" in his obligation to pay child support has occurred.

It could have been very easy for the parties to have stipulated under the heading: "INCOME TAX RETURNS" at Section 11 of the Agreement that either party could obtain the others tax return(s) without regard to the reason(s) for so wanting the documents. Such did not occur. Rather, the parties made a conscious choice to require a nexus between the production of the wife's income tax return(s), *i.e.,* "modification" in child support payments was felt by the appellee-husband to be "appropriate". Absent such a triggering mechanism, the appellant-wife is not required to disclose her income tax form(s), especially for past years which would not have an impact on her obligation to incur her pro-rata share of the burden of paying for her minor son's support. In this regard, the appellee-husband did not dispute the appellant-wife's statements to the effect that previous court orders have been issued "modifying" the support payments.

It would appear that the thrust of the appellee-husband's objective in securing the tax returns for 1984 through 1987 is to see if the appellant-wife's income was "higher", as he "believed", so as to justify some type of retroactive reimbursement to him of the support payments he made during those years to equalize the "perceived" imbalance once the return(s) would be produced.

Because nowhere during the contempt hearing did the appellee-husband offer that his reasoning for securing the tax returns of his appellant-wife was to determine if his "belief" that her income was "higher" than previously known by him so as to warrant a "modification" of the support payments, we fail to see a compliance with the condition precedent of the Agreement that such a "belief"

be possessed by the appellee-husband as a justification for making a demand for such documents and, ultimately, holding the appellant-wife accountable (in "contempt") for failing to comply with his requests for the production of the returns. This is evident from Exhibits "B" & "C" attached to the appellee-husband's petition seeking to hold the appellant-wife in contempt, wherein no mention is made in his request for the 1985 and 1986 tax returns of the appellant-wife that the same were being sought to assess whether a fluctuation ("upward") in the income of the wife had transpired during those years to prompt a modification hearing/petition in the payment of support by the appellee-husband.

A blanket production of the income tax returns of the appellant-wife (for the years 1984 through 1987) without even an allegation that it is premised upon the appellee-husband's "belief" that a change in income ("upward") in the appellant-wife's source of revenue has taken place is contrary to the plain meaning of the Agreement, in particular Section 10A(3). Accordingly, we cannot endorse the interpretation given that Section by the court below since the Agreement is not subject to such an interpretation as viewed by this Court. See, e.g., Kleintop v. Kleintop, 291 Pa.Super. 491, 436 A.2d 223 (1981).

Accordingly, because the appellant-wife was not in violation of the Agreement, the appellee-husband's repeated efforts to obtain her tax returns, without any showing that a change was called for because of her income fluctuation, was not justified. Thus, the appellant-wife could not be held in contempt absent such an allegation of purpose on the part of the appellee-husband, whether it appeared at the contempt hearing or in communications exchanged between counsel for the parties. Because such is not the case instantly, the contempt order cannot stand, and the award of counsel fees to the appellee-husband must also fail as having its origin in the legality of the contempt order found by this Court today to have been improperly entered.

As such, the facts do not evidence an intentional violation of any contractual agreement executed by the parties to this dispute warranting the appellant-wife to be held in contempt and justifying the issuance of counsel fees to the appellee-husband.[4]

More importantly, the lower court lacking jurisdiction to hear the dispute in the context of a contempt hearing, entered an order that is subject to reversal. See generally *Sonder v. Sonder*, supra.

Order reversed. Jurisdiction relinquished.

JOHNSON, J., concurs in the result.

---

4. As stated by the appellee-husband at the contempt hearing, he felt the Agreement entitled him to seek production of the income tax returns of his former spouse merely to monitor her income. Implicit in that statement was the understanding that he need not have any "belief" that her income did in fact increase so as to call for a modification of the parties' separate obligations to support their minor-child. Such type of unfounded request for the production of the appellant-wife's income tax returns was not contemplated by the parties, at least as their intent was exemplified in the Property Settlement Agreement at Section 10.