# McKelvey v. McKelvey

C.P. of Lawrence County, No. 10235 of 2008, C.A.

*Phillip L. Clark, Jr.,* for plaintiff.
*Susan M. Papa,* for defendant.

HODGE, *J.,* March 28, 2013—This matter was before the court for a hearing on a petition to reform marital settlement agreement and petition for contempt filed on behalf of the defendant Eileen M. McKelvey (hereinafter, "wife"), and a counter-petition filed on behalf of the plaintiff, Nicholas G. McKelvey, (hereinafter, "husband"). The relevant factual and procedural background of this case is summarized as follows:

Husband and wife were married on July 12, 1986. Husband filed a complaint in divorce on February 8, 2009. This case was scheduled to proceed to an equitable distribution hearing on September 2, 2009, but the parties reached a resolution of all outstanding economic issues. Husband and wife reduced their agreement to writing, and the same was entered as a consent decree (hereinafter, "marital settlement agreement" or "MSA") on January 29, 2010.

On September 3, 2010, wife filed a petition for contempt, wherein wife asserted that husband: 1) failed to pay wife a lump sum payment of $9,353.02 pursuant to article 3.02(D) of the MSA; 2) failed to attend AA meetings pursuant to article 5.03 of the MSA; and 3) violated paragraph 8.04 of the MSA by repeatedly communicating with wife in

an offensive and aggressive manner via e-mails. Prior to the contempt hearing taking place, the parties reached an agreement. Husband agreed to pay wife a lump sum of $7,000.00 to satisfy his remaining obligation under article 3.02(D) of the MSA. The parties also agreed to modify article 5.01 of the MSA to provide that husband would reimburse wife for school clothing and Christmas gifts after wife provided husband with receipts for the same. This agreement was incorporated into an order of court on March 1, 2011.

On August 10, 2011, wife asserted that husband failed to comply with the aforementioned agreement, and she petitioned the court for a contempt hearing. A contempt hearing was scheduled, but continued for almost a year because the parties were attempting to resolve the pending issues. Their attempts were fruitless, however, and on July 25, 2012 wife filed a petition to reform marital settlement agreement. Husband filed a counter-petition on October 2, 2012. The parties' respective petitions were consolidated with wife's petition for contempt, and hearings were held on October 2, 2012 and March 13, 2013. Wife's petition for contempt and petition to reform marital settlement agreement and husband's counter-petition are presently before the court for a determination.

When considering a petition for civil contempt of court, the Pennsylvania courts have consistently stated that:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the

preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellant [sic] court must place great reliance upon the discretion of the trial judge. On appeal from a court order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Langendorfer v. Spearman*, 797 A.2d 303, 307-08 (Pa. Super. 2002) (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001)).

In order to sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006).

In her petition for contempt, wife asserts that husband violated article 3.02(D) of the MSA, which provides as follows:

Husband shall pay to wife a lump sum of $9,353.02 on or before October 1, 2009, which husband has now paid. In addition, husband shall pay to wife a lump sum of $9,353.02 on or about February 15, 2010. Wife will accept any good faith efforts on the part of husband if

he is financially unable to pay the sum due on February 15, 2010.

Husband testified that he paid wife $2,325.00 towards the $9,353.02 owed on October 1, 2009. Pursuant to the parties' consent order entered on March 1, 2011, husband and wife agreed that husband would pay $7,000.00 within thirty days to satisfy his remaining obligation. Husband testified that subsequent to March 1, 2011 he paid wife $1,000.00 on or about May 30, 3011, being Memorial Day. Husband made a second payment in the amount of $2,000.00 when he received his income tax return for the tax year 2012. A third payment was made on August 10, 2012 in the amount of $2,500.00, which is evidenced by a letter from husband's attorney to wife's attorney. See plaintiff's exhibit "1". Husband admits to currently owing wife $1,500.00.

Wife's testimony supports husband's assertion that he made a $1,000.00 payment around Memorial Day 2011 and a $2,500.00 payment on August 10, 2012. See N.T. Oct. 2, 2012, pp. 18, 21-23. Additionally, defendant's exhibit "2" shows wife received a $2,000.00 payment in 2012. The court concludes that husband currently owes wife $1,500.00 pursuant to the MSA and consent order issued on March 1, 2011.

Wife next contends that husband is in contempt of court for failing to comply with article 5.03 of the MSA, which provides:

Child Custody

Custody of the minor children shall continue at No. 10248 of 2008, C.A. Husband shall attend AA meetings and shall further attend individual counseling session with a licensed therapist. Consideration of [Husband's] travel schedule is acknowledged. Husband shall further provide to Wife all information as to counseling and documentation of his attendance at counseling or other therapy and treatment.

Husband testified that he attended AA classes for two and a half months beginning in August 2011. Husband stated that he was unable to complete the course because he was unable to continue paying for the classes. Wife stated that husband never provided her with any documentation that he complied with article 5.03. The testimony clearly establishes that husband failed to attend and complete individual counseling sessions, as agreed upon by the parties.

Lastly, wife contends that husband is in contempt of court for failing to comply with article 8.04 of the MSA by communicating with wife via e-mail in an inappropriate and harassing manner. Article 8.04 of the MSA provides, in relevant part, as follows:

Right to Live Separately and Free from Interference

Each party shall live separately and apart from the other at any place or places that he or she may select. Neither party shall molest, harass, annoy, injure, threaten or interfere with the other party in any manner whatsoever...

Wife testified that husband communicates with her via e-mail and that husband is often belligerent towards her in these e-mails. Husband stated that both parties say inappropriate things to each other in the e-mails.

In disposing of wife's petition to find husband in contempt of court for failing to comply with article 3.02(D) of the MSA and for failing to complete AA classes pursuant to article 5.03 of the MSA, the court determines that husband's action amount to a willful and deliberate disregard for this court's orders. Although husband contends that his ability to comply with the parties' martial settlement agreement was frustrated by his recent unemployment, wife established that even prior to husband becoming unemployed, Husband put his personal needs over his financial obligations. Throughout 2010 and 2011 husband earned in excess of $75,000.00 a year. Husband's earnings clearly enabled him to comply with his financial obligations as set forth in the MSA and consent order entered on January 29, 2010 and March 1, 2011, respectively. Wife's petition for contempt is therefore granted in part.

With respect to wife's request that husband be found in contempt for his inappropriate communications to her via e-mails, the court determines that there is insufficient evidence to justify a finding of willful and deliberate misconduct. Wife's petition for contempt is therefore denied in this respect.

The final matters pending before the court is wife's

petition to reform marital settlement agreement, and husband's counter-petition. Wife's petition to reform marital settlement agreement asserts that husband has failed to reimburse wife for purchases made by wife on behalf of the parties' children. Wife requests this court to reform the parties' agreement and provide for an exact monthly support obligation to replace the current agreement entered into on March 1, 2011. Husband's counter-petition argues that if this court grants wife's petition to reform the MSA, the court must revert to article 5.01 of the MSA, which provides in relevant part that:

> Wife waives any claim for alimony, alimony pendente lite and spousal support. In the event that Wife shall seek an increase of any payment in the foregoing paragraphs, all payments shall cease immediately and Wife shall be entitled to guideline child support only for the children then in her custody, with Husband to receive credit for all payments made under the foregoing paragraphs.

In Pennsylvania, a settlement agreement between a husband and wife is governed by the law of contracts, unless the agreement itself provides otherwise. *Caccavo v. Caccavo*, 565 A.2d 1199 (1989); *Sonder v. Sonder*, 549 A.2d 155 (1988). When the language of such an agreement is clear and unambiguous, the focus of the interpretation must be upon the terms as manifestly expressed. *Caccavo*, 565 A.2d at 1202. The standard of enforceability of a contractual agreement is also clear: "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *McMahon v. McMahon*,

612 A.2d 1360, 1363 (Pa. Super.1992) (citations omitted). As such, a trial court may interpret a marital settlement agreement like a contract, but the court has neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake. *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super.2004).

When construing agreements involving clear and unambiguous terms, a trial court need only look to the writing itself to give effect to the parties' understanding. *Vaccarello v. Vaccarello*, 757 A.2d 909, 913-914 (Pa. 2000). A court may not modify the plain meaning of the words under the guise of interpretation. *Id.* A court must consider such contracts without reference to matters outside of the document, and we must ascertain the parties' intentions when entering into the contract from the entire instrument. *Purdy v. Purdy*, 715 A.2d 473, 475 (Pa.Super. 1998). Furthermore, the parties are bound "without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Sabad v. Fessenden*, 825 A.2d 682, 688 (Pa. Super.2003).

At the March 13, 2013 hearing, wife testified at length to husband's failure to provide wife with semi-annual lump sum payments of $2,000.00 in September and December of each year. The parties agreed that husband would make these payments to wife, so that wife could purchase school clothes and Christmas gifts for the minor children. Husband has not fully complied with this provision of the MSA since December of 2010. However, the recording

clearly establishes that on March 1, 2011, the parties agreed to modify this provision of the MSA agreement to provide that

> Wife shall hereinafter either advise husband what Christmas gifts and school clothes to be purchased, or in the alternative make said purchases and provide Husband with receipts confirming that said sums [were] use[d] for the purpose of purchasing school clothes and Christmas gifts.

See consent order, March 1, 2011, parag. 4.

Thus, subsequent to December 2010, husband was no longer required to pay wife $2,000.00 in September and December of each year. Wife did provide the court with receipts, which she provided to her counsel, pursuant to the parties' consent order. Husband has not reimbursed wife for many expenses because he contests the reasonability of wife's purchases. After reviewing the March 1, 2011 consent order, the court finds that Wife is clearly entitled to these funds.

Husband's refusal to cooperate with wife in effectuating any aspect of the MSA is obviously a frustrating and prejudicial process. However, when the court exercises a global review of husband's defaults, the court determines that husband's shortcomings are not so extreme that modification is warranted. The MSA and subsequent consent order are clear and unambiguous agreements, which fully represent the parties' intentions at the time of their respective formations. The proper remedy for

husband's breach is a damage award, in the amount of value expended by wife for purchases made on behalf of the parties' children since the March 1, 2011 consent order. After reviewing the evidence and testimony presented in this regard, the court determines that husband presently owes wife $1,240.74 for expenses wife made during this time period.

The only remaining issue pending before the court is husband's counter-petition, wherein husband asserts that because wife is requesting a modification of her monthly support, husband's support obligation should be calculated pursuant to the support guidelines set forth at Pa.R.C.P. 1910.16-3.

Although wife specifically stated that she was requesting this court to increase husband's support obligation, N.T. Oct. 2, 2012, p. 30, the court interprets wife's request to mean that wife wanted to eliminate husband's obligation to pay her $2,000.00 every September and December and increase her monthly support award by distributing the $4,000.00 over the course of a year. The court does not believe wife was actually requesting a global increase in support. Rather the court interprets wife's request to mean that she wanted to enforce this provision of the MSA through the Office of Domestic Relations by adding it to her monthly support award. Because the court determined that it was not appropriate to modify the parties' agreement and that wife's request is not categorized as an increase per se, the court finds no reason to grant husband's counter-petition. Husband's counter-petition is therefore denied.

Consistent with this opinion, the court will enter the following order granting wife's petition for contempt, denying wife's petition to reform marital settlement agreement, and denying husband's counter-petition.

## ORDER OF COURT

And now, March 28, 2013, with this matter being before the court for a hearing defendant's petition for contempt and petition to reform marital settlement agreement, and on plaintiff's counter-petition, with the plaintiff, Nicholas G. McKelvey, appearing and being represented by Phillip L. Clark, Jr., Esquire, and with the defendant, Eileen M. McKelvey, appearing and being represented by Susan M. Papa, Esquire, and in consideration of the testimony and evidence presented, the court hereby orders and decrees as follows:

1. Defendant's petition for contempt is granted in part and denied in part as follows:

a. The court finds the plaintiff in contempt of court for failing to pay defendant the remaining lump sum obligation of $1,500.00.

b. The court finds the plaintiff in contempt of court for failing to complete Alcoholics Anonymous classes and providing defendant with verification of the same.

c. Defendant's request that plaintiff be held in contempt of court for failure to comply with article 8.04 of the consent decree is denied.

2. Plaintiff may purge himself of the contempts set forth above by:

a. Immediately paying to defendant $1,500.00 to satisfy his remaining obligation pursuant to article 3.02(D).

b. Paying defendant's attorney's fees associated with this contempt petition in the amount of $750.00 within thirty (30) days from the date of this order of court.

c. Enroll in Alcoholics Anonymous classes within thirty (30) days from the date of this order of court and file proof of the same with the court.

3. Defendant's petition to reform marital settlement agreement is denied.

4. Plaintiff's counter-petition is denied.

5. The parties shall fully comply with all provisions of the consent decree, entered on January 29, 2010, and the consent order, entered on March 1, 2011.

6. Plaintiff is directed to reimburse defendant $1,240.74 within thirty (30) days from the date of this order of court.

7. Plaintiff is additionally required to comply with all outstanding orders of court.

8. Both parties are advised that failure to comply with this order of court and/or the parties' MSA and consent order may result in further sanctions being imposed by this court, including but not limited to, a term of incarceration and payment of attorney's fees.

502

9. The prothonotary shall properly serve notice of this order and attached opinion upon counsel of record and any party not represented by counsel at their last known address as contained in the court's file.