2017 PA Super 255

| | |
|---|---|
| ERIC M. BIENERT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SUZANNE S. BIENERT | |
| Appellant | No. 1738 MDA 2016 |

Appeal from the Decree Entered September 29, 2016
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2014-1098

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

OPINION BY SOLANO, J.: **FILED AUGUST 07, 2017**

Appellant, Suzanne S. Bienert ("Wife"), appeals from the final decree of divorce dated September 29, 2016. She specifically challenges an order denying a petition that she filed in June 2016 to void a Marital Property Agreement ("the Agreement") that she signed with Husband, Eric M. Bienert ("Husband") just before the parties filed for divorce. Wife contends that the trial court abused its discretion in denying the petition without holding an evidentiary hearing. For the following reasons, we affirm.

The parties married on April 1, 1995. On March 1, 2014, Wife and Husband separated, and Husband drafted the Agreement using a form that he found on the Internet and that Husband and Wife then jointly revised.

Excerpt from Tr. of Hrg., 8/28/15, at 2.[1]  The Agreement allocated marital property between the parties; among other things, Wife would receive the parties' boat and Husband would receive their former marital residence. Agreement at 3-5.  Although the Agreement was signed during the parties' separation, it stated,

> It is agreed and understood that this Agreement finally settles all rights of the parties and the property jointly or individually owned by the parties, and that this Agreement, and the enforceability thereof, is not contingent upon either party or both parties being granted a divorce on any grounds. However, if either or both parties are granted a divorce on any grounds, the parties agree that this Agreement shall be made a part thereof and that such decree or judgment shall not conflict with the terms hereof except to the extent disapproved by the Court.

*Id.* at 13.  The parties signed the Agreement on March 20, 2014.  *Id.* at 17.

On March 26, 2014, Husband filed a Complaint in Divorce, and the parties simultaneously filed the Agreement with a request that the court incorporate it into its final decree of divorce.  The trial court entered the Agreement as an order on March 27, 2014.

On December 15, 2014, Wife filed a petition for alimony *pendente lite*. Wife was represented by counsel at that time.  In her petition, Wife argued that the Agreement did not cover alimony *pendente lite* and thus did not bar her from receiving such a recovery.  Wife's Pet. for Alimony Pendente Lite, 12/15/14, at 3.  Husband asserted that the Agreement was a complete and

---

[1] It appears that only excerpts from this hearing were transcribed and included in the record.

final settlement of all rights and obligations of the parties and that Wife was thereby barred from receiving alimony *pendente lite*. Notably, Wife did not argue at any time with respect to her petition that the Agreement was invalid for any reason; her only argument pertained to whether the Agreement, by its terms, applied to alimony payments. ***See id.***

On February 18, 2015, the trial court denied Wife's petition. Trial Ct. Op., 2/18/15, at 4. The court held that Wife was precluded from obtaining alimony *pendente lite* or spousal support from Husband under the terms of the Agreement, which, the court concluded, was intended to be a final settlement of all claims arising from the parties' marriage, including any support obligations. ***Id.*** at 3-4. The court observed, "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." ***Id.*** at 2, *quoting* **Stackhouse v. Zaretsky**, 900 A.2d 383, 386 (Pa. Super. 2006).

After the trial court denied Wife's counseled petition for alimony *pendente lite*, Wife's counsel withdrew his appearance and Wife began representing herself. Acting *pro se*, Wife filed multiple petitions to enforce the Agreement, including petitions seeking title to the boat and other items allocated to her in the Agreement. Specifically, in April 2015, Wife sought to enforce the Agreement by filing a Petition to Request Property Cash Settlement, a Petition to Retrieve Personal Property, and a Petition to Request Cash Settlement. All of these petitions were based on the

- 3 -

Agreement and therefore necessarily were premised on the view that the Agreement was valid and enforceable.[2] The court deferred ruling on Wife's petitions.

On May 20, 2015, Husband filed a petition to hold Wife in contempt for violating the Agreement by failing to remove the boat and other items from the former marital residence and by failing to execute a deed to transfer title to the residence to Husband. Husband's Pet. for Contempt, 5/27/15. In her Answer to Paragraph 3 of Husband's petition, which alleged Wife's duties under the Agreement, Wife, acting *pro se*, averred: "Agreed that the Marital Property Agreement was signed into effect on March 20, 2014, (while the Defendant was under duress because the Plaintiff had the Defendant sign the [Agreement] immediately after Defendant was sentenced in court for three felonies — charged with one misdemeanor)."[3] Wife's Answer to Husband's Pet. for Contempt, 6/1/15, ¶ 1. Wife's averment was her first mention of duress in connection with the Agreement, but even in that pleading, Wife made no claim that the Agreement was invalid, and, instead,

_____

[2] In addition to the petitions themselves, Wife filed several pleadings in support of her petitions that also were based on enforcement of the terms of the Agreement. **See, e.g.**, Wife's Sur-Answer to Husband's Answer to Wife's Petition to Request Property Cash Settlement, 5/29/15; Wife's Sur-Answer to Husband's Answer to Wife's Petition to Request Cash Settlement of $3,753.33, 6/1/15; Wife's Petition: Emergency Request to Resolve Wife's Petition to Request Property Cash Settlement, 6/18/15.

[3] Wife was sentenced for crimes in a separate matter not at issue here.

she proceeded to make arguments based on the Agreement in the rest of her answer. *See id.* at ¶ 5.

Eight days later, on June 9, 2015, Wife, again acting *pro se*, filed her own petition seeking to hold Husband in contempt for violating the Agreement. She alleged that Husband had failed to provide Wife with the title to the boat. Wife's Pet. for Contempt, 6/9/15.

On August 28, 2015, the court held a hearing on the pending petitions. During the hearing, Wife, acting *pro se*, made various arguments to avoid the terms of the Agreement on grounds of mistake, misrepresentation, or duress. She contended that she thought the Agreement applied only to her separation, and not to her divorce. Excerpt from Tr. of Hrg., 8/28/15, at 2-3. She referenced the court's statement in its February 18, 2015 opinion denying her petition for alimony *pendente lite* that agreements should be enforced "absent fraud, misrepresentation, or duress" and complained that her counsel had failed to raise such issues with the court at the time the alimony issues were litigated. *Id.* at 4-5. Wife argued that there was fraud, misrepresentation, and duress because Husband "took me to sign [the Agreement] on the same day that I was charged with three felonies" and worked out the Agreement with his girlfriend while Wife "was in rehab." *Id.* at 6-7.

The trial court heard Wife's arguments and permitted her to place them on the record. *See* Excerpt from Tr. of Hrg., 8/28/15, at 7-10. The

court held, however, that it was too late to challenge the Agreement because the court had already based decisions in the case on the Agreement, which had not previously been challenged. The court stated:

> [T]here is an agreement that you entered into. At the time the only thing that was challenged by you and your attorney was the alimony pendente lite. The Court does have an opinion. The Court has relied on this. All your other petitions rely on the fact that it is a valid agreement, everything.
>
> So any kind of contract that you enter into, once it's entered into and it's determined to be valid, you can't then go back later and have like a second or third bite at the apple and say, well, this is other stuff that wasn't considered.
>
> . . . When you brought up your issues with the settlement agreement that alimony pendente lite, you didn't raise anything about fraud, misrepresentation, duress, or anything like that at that time. That's why this law [the reference in the February 18, 2015 opinion to an absence of "fraud, misrepresentation, or duress"] is in here because it wasn't raised.
>
> . . . So the Court made a ruling and part of the ruling is that . . . there was no allegation of fraud, misrepresentation, or duress.
>
> . . . [W]e're bound by the same agreement, the settlement agreement, and the fact that if there was an issue, you or your attorneys at the time should have raised it when you raised your other issues.

*Id.* at 4-5, 7.

On September 2, 2015, after hearing the arguments from both parties and reviewing the parties' filings, the trial court entered an order granting the three *pro se* petitions filed by Wife in April 2015 and stating that "any outstanding petitions and motions in this matter which are not addressed in this Order are hereby dismissed." Trial Ct. Op., 9/2/2015, at 5-6. The

outstanding (and thereby dismissed) petitions included both Husband's and Wife's petitions for contempt.

On March 16, 2016, Wife retained new counsel to represent her in these proceedings. Then, on June 9, 2016, Wife filed a counseled petition to void the Agreement. In that Petition, Wife alleged that Husband used duress, misrepresentation, and fraud to induce her to sign the Agreement. Wife's Pet. to Void Marital Property Agreement, 6/9/16, at 3.[4] On June 13, 2016, the trial court entered an order denying Wife's petition. The order read:

> [Wife's] Petition to Void Marital Property Agreement is DENIED without a hearing. The Court held the parties' Marital Property Agreement to be valid and enforceable in its February 18, 2015 Opinion and Order, and therefore the issue has been ruled upon.

Order, 6/13/16. *Id.*[5]

_____

[4] Specifically, Wife's petition alleged that Husband took advantage of the stress that she faced as a result of her alcoholism and depression, as well as the criminal charges that had been filed against her, to prevent her from hiring an attorney and understanding the scope of the Agreement. Wife's Pet. to Void Marital Property Agreement, 6/9/16, at 3-4. Wife further alleged that, despite the Agreement's language, Husband told her that the Agreement would apply only to the parties' separation and not to their divorce. *Id*. at 4. Wife claimed that her misunderstanding of the Agreement's scope should cause the Agreement to be declared void on the basis of a mutual mistake of fact. *Id.*

[5] Wife appealed the June 13, 2016 order on July 8, 2016. This Court issued an order directing Wife to show cause as to why that appeal should not be quashed as having been taken from an interlocutory order. On September 9, 2016, Wife filed a praecipe to discontinue that appeal without prejudice.

On September 29, 2016, the trial court entered a final decree in divorce. Order, 9/29/16. On October 19, 2016, Wife filed this timely appeal, in which she raises a single issue: "Did the trial court abuse its discretion in denying Appellant's Petition to Void Marital Property Agreement without a hearing?" Wife's Brief at 4.

Our standard of review is to determine whether the trial court abused its discretion. **Simmons v. Simmons**, 723 A.2d 221, 222 (Pa. Super. 1998). A finding of abuse of discretion "requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." **See id**.

On appeal, Wife argues that the trial court erred by precluding her from presenting evidence that would show that (1) she signed the Agreement against her will, and (2) a mutual mistake of fact existed in the formation of the Agreement, either of which would render it void. Wife's Brief at 20. Wife claims that the trial court's action contravened the public policy and intent of the Divorce Code to effectuate economic justice between parties who are divorced or separated. **Id.** In support of her argument, Wife relies on this Court's decision in **Foley v. Foley**, 572 A.2d 6 (Pa. Super. 1990). According to Wife, the Court in **Foley** vacated a divorce decree after it found that the wife in that action had been denied a fair trial and that, as a result of intimidation by her husband, did not have a full opportunity to

litigate economic claims during her divorce.  Wife's Brief at 26 (citing **Foley**, 572 A.2d at 10).  Wife argues that, under **Foley**, she has been unfairly denied an evidentiary hearing and the opportunity to establish facts to prove that she signed the Agreement under duress.  Wife's Brief at 27.

Husband points out that Wife cites no legal authority requiring a court to hold a hearing on every petition or requiring the court to hold a hearing under the circumstances at issue here.  Husband's Brief at 4.  Husband contends that Wife is barred from obtaining relief by the equitable doctrine of unclean hands[6] and by the Pennsylvania Supreme Court's holding in **Simeone v. Simeone**, 581 A.2d 162, 165 (Pa. 1990).  Husband construes **Simeone** as holding that a spouse is bound by the terms of her agreement, regardless of whether she read and understood the contract or whether the contract was reasonable or a good bargain.  Husband's Brief at 4-5 (citing **Simeone**, 581 A.2d at 165-66).  Wife responds that **Simeone** is not applicable because it addressed the validity of a prenuptial agreement, rather than a marital property agreement, and it did not address the duress and mistake issues raised by Wife in the instant case.  Wife's Reply Brief at 1-2.

---

[6] The doctrine of unclean hands derives from the equitable maxim that "he who comes into equity must come with clean hands."  **Jacobs v. Halloran**, 710 A.2d 1098, 1103 (Pa. 1998).  It "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."  **Id.**

We conclude that the trial court did not abuse its discretion in denying Wife's June 9, 2016 petition to declare the Agreement void. By the time Wife filed that petition, the court had already made several rulings based on the Agreement, including its February 18, 2015 ruling denying Wife's request for alimony *pendente lite*. Several of the court's rulings were with respect to petitions filed **by Wife** to enforce the Agreement. With this history, the trial court did not err in holding that Wife's June 2016 petition to void the Agreement came too late.

The trial court referenced the doctrine of res judicata in explaining its decision, **see** Excerpt from Tr. of Hrg., 8/28/15, at 6, 9-10, and Husband defends the result under the doctrine of unclean hands. We think the more apt legal principles are those of law of the case and equitable estoppel.[7]

The law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." **Messenger v. Anderson**, 225 U.S. 436, 444 (1912) (Holmes, J.). The doctrine is composed of a collection of rules that "not only [] promote the goal of judicial economy . . . but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper

---

[7] "As an appellate court, we may uphold a decision of the trial court if there is any proper basis for the result reached; thus we are not constrained to affirm on the grounds relied upon by the trial court." **Generation Mortg. Co. v. Nguyen**, 138 A.3d 646, 651 (Pa. Super. 2016) (citation omitted).

and streamlined administration of justice; and (5) to bring litigation to an end." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995), *citing* Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. Pa. L. Rev. 595, 604-05 (1987).

The Supreme Court of Pennsylvania has embraced this doctrine most specifically with respect to adherence to prior decisions in the same case by a higher court or by another judge of coordinate jurisdiction. *See Starr*, 664 A.2d at 1331-32. But, as the secondary authority on which the Court relied in *Starr* explains, the considerations that underlie the doctrine also strongly weigh in favor of adherence by a trial judge to a decision by that same judge earlier in the case:

> [L]aw of the case doctrine . . . saves both litigants and the courts from duplications of effort. If permitted to argue and brief the same issue repeatedly during the course of the same litigation, some litigants would be indefatigable in their efforts to persuade or to wear down a given judge in order to procure a favorable ruling. Such use of clients' finances, legal counsels' time and energy, and judicial resources is wasteful from a systemic perspective.

Steinman, at 603; *see also Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) ("[a]lthough it is often said that the law of the case doctrine does not limit the power of trial judges to reconsider their prior decisions, . . . the court must take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling"). Therefore, although the trial court here was not barred by the law-of-the-case doctrine from reconsidering its prior

- 11 -

rulings regarding the Agreement and its validity, it acted appropriately in deciding to **adhere** to those prior rulings to maintain the consistency and uniformity of its decisions that law-of-the-case principles favor. As we have stated, "Once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable and an appeal therefrom is successfully prosecuted." *Golden v. Dion & Rosenau*, 600 A.2d 568, 570 (Pa. Super. 1991) (discussing rulings by different trial judges). "As a general proposition, [a court] should not revisit questions it has already decided." *Pa. State Ass'n of County Comm'rs v. Commonwealth*, 52 A.3d 1213, 1230 (Pa. 2012) (referring to reconsiderations by Supreme Court).

In this same vein, the doctrine of judicial estoppel also furthers consistency and uniformity in decision-making. Under this doctrine, "a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." *Black v. Labor Ready, Inc.*, 995 A.2d 875, 878 (Pa. Super. 2010) (citation omitted). Judicial estoppel "appl[ies] with equal if not greater force when a party switches positions within the same action." *Ligon v. Middletown Area Sch. Dist.*, 584 A.2d 376, 380 (Pa. Cmwlth. 1990). The purpose of judicial estoppel is "to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing

positions as the moment requires." ***Gross v. City of Pittsburgh***, 686 A.2d 864, 867 (Pa. Cmwlth. 1996).

In ***Ligon***, the plaintiff brought an action against the defendant school district and a contractor performing renovations for the school district. ***Ligon***, 584 A.2d at 379. The plaintiff settled with the school district, but the issue of the school district's liability nevertheless went to the jury for apportionment of liability between the school district and the contractor. ***Id.*** After the jury returned a verdict against the school district in an amount exceeding that of the settlement, the plaintiff asserted that the school district was immune from suit and that the contractor should be solely responsible for the jury's award. ***Id.*** The court held that the plaintiff was estopped from taking that position in light of its prior arguments in the case and that it could not change its position merely "because it suited [plaintiff]'s interest." ***Id.*** at 380.[8]

Like the plaintiff in ***Ligon***, Wife has taken inconsistent positions regarding the validity of the Agreement throughout the divorce proceedings. Wife initially sought to enforce the Agreement, as evidenced by her filing of multiple petitions to receive property and payment in accordance with its

---

[8] The court opined: "Not since Joan dePlucelle in Shakespeare's Henry VI, Part I, attempted to defend herself from a capital charge by proclaiming herself a virgin and then, seeing that that particular defense was unlikely to prevail, informed the judge that she was with child, has anyone argued a judicial point with a more breathtaking lack of concern for consistency." ***Ligon***, 584 A.2d at 379.

terms. Wife was successful in several of these petitions, including her April 2015 petitions to request a property cash settlement, retrieve personal property, and request a cash settlement. Then, in June 2016, after retaining new counsel, Wife changed her position and petitioned to void the Agreement. Husband argues that Wife's change in positions suggests that she may have found the Agreement to be disadvantageous over time. Wife is judicially estopped from changing her position merely because it "suited [her] interest." **Ligon**, 584 A.2d at 380; **see also Starr**, 664 A.2d at 1331; **Golden**, 600 A.2d at 570.

We conclude that the trial court did not abuse its discretion in adhering to its initial conclusion that the parties' Agreement is valid and enforceable and in refusing to permit Wife to seek invalidation of the Agreement after she successfully advanced arguments in favor of the Agreement throughout the case. We also conclude that it did not err in denying Wife's latest Petition to Void the Marital Property Agreement without holding a hearing on the petition.

Wife's argument that a hearing was required under **Foley** is misplaced. This is not a case where Wife had no opportunity to challenge the Agreement. She could have raised her objections to the Agreement's validity in the early proceedings before the trial court, when the Agreement was asserted by Husband as a basis to deny her request for alimony *pendente lite*. Indeed, she claims to have raised her doubts about the

Agreement's validity with her counsel at that time; nevertheless, for whatever reason, neither Wife nor her counsel claimed that the Agreement's invalidity was a ground to reject Husband's argument, and her request for alimony was denied on the basis of the Agreement's terms. It was not until half a year had passed before Wife raised the validity question, after many other petitions had been litigated on the assumption that the Agreement was valid. The trial court heard Wife's arguments at length during its August 28, 2015 hearing on Wife's pending petitions, and it then rejected her effort to have the Agreement held invalid because she raised the issue too late. The trial court did not abuse its discretion in doing so.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2017