J-S10032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CITIZENS BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY G. GUERRA, BIANCA | : | |
| GUERRA, NKA BIANCA A. BUCANO, | : | |
| MELISSA M. BUCANO, ELILSA B. | : | No. 3173 EDA 2017 |
| GUERRA, LORETTA C. GUERRA | : | |
| | : | |
| | : | |
| APPEAL OF: BIANCA BUCANO | : | |

Appeal from the Order Entered August 23, 2017
In the Court of Common Pleas of Monroe County Civil Division at No(s):
4050 CV 2013

BEFORE:    BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                **FILED MARCH 20, 2018**

Appellant Bianca A. Bucano[1] appeals *pro se* from the order disposing of her numerous filings against Appellee Citizens Bank in this mortgage foreclosure action. She raises a litany of arguments, which we set forth below, assailing the court's reasoning. We affirm in part and quash in part.

Briefly, by way of background, Appellant is divorced. She and her ex-husband signed a post-nuptial agreement, which awarded her the property subject to the underlying foreclosure and provided that she was solely responsible for paying the mortgage and property taxes.

_____

[1] Appellant was also known as Bianca Guerra. The other captioned defendants are not parties to this appeal.

On May 16, 2013, Appellee commenced foreclosure proceedings against Appellant. At some time in 2013, Appellant sued her ex-husband in regard to the post-nuptial agreement, in a case presided over by the Honorable Jonathan Mark, who is also the judge in the instant mortgage foreclosure suit. N.T., 8/21/17, at 9.[2] She claimed that her ex-husband failed to give her power of attorney, which she argued was necessary to communicate with Appellee and resolve the then-outstanding foreclosure action. *Id.* With respect to Appellant's claim against her ex-husband, Judge Mark ruled against her.[3] It does not appear that Appellant appealed that decision to this Court.

We state the subsequent procedural history for the foreclosure action, as summarized by the trial court:

> This is a mortgage foreclosure action in which default judgment was entered on August 5, 2014, [Appellant's] initial petition to strike the default judgment was denied on March 12, 2015, and [her] subsequent petition to strike was denied on April 9, 2015.[4] Significantly, while later efforts to attack or collaterally attack the judgment and subsequent sheriff's sale were made, neither

---

[2] Paragraph eleven of the agreement permits a party, in the event of any breach, to sue for damages, specific performance, or another appropriate remedy. Ex. 2 to Appellant's Mot. to Recuse, 8/14/17.

[3] The instant record does not otherwise elaborate on the details of the post-nuptial lawsuit, which was docketed at 2495 CV 1999.

[4] In both of her *pro se* petitions to strike the default judgment, Appellant contended that her ex-husband breached the post-nuptial agreement by not contacting Appellee, "releasing his interest" in the property, and giving her power of attorney to resolve the foreclosure with Appellee. Appellant's Pet. to Strike Default J., 2/25/15, at 1; Appellant's Pet. to Strike Default J., 4/6/15, at 1.

Appellant nor any other party filed a timely appeal from the . . . orders denying the petitions to strike the default judgment.

Appellant has been incarcerated throughout the pendency of this action. She is serving a state sentence of 11 ¼ to 23 ½ years for a 2012 conviction of multiple counts of Corrupt Organizations, Insurance Fraud, Forgery, Theft by Deception, Attempt to Commit Theft by Deception, Conspiracy, and Dealing in Proceeds of Unlawful Activities. In addition, [Appellant] has been ordered to pay restitution totaling more than $1.1 million. [Appellant's] direct appeals have been exhausted, the judgment of sentence is final, and her collateral claims under the Post Conviction Relief Act have been denied. According to Appellant, she has filed a petition for *habeas corpus* relief in federal court; however, no documentary evidence of such a filing has been submitted.

After the foreclosure judgment was entered, and while she was incarcerated, Appellant serially filed motions, petitions, and requests for various forms of relief, including several filings through which she attempted to collaterally attack the judgment and others through which she sought a stay the sheriff's sale [that occurred on March 30, 2017]. All of her motions were denied as being procedurally, factually, legally, or jurisdictionally devoid of merit. In addition, Appellant filed appeals that were . . . quashed . . . by the Superior Court.[5] . . .

Around and after the date of the sheriff's sale, Appellant filed several motions and objections. In an attempt to address all outstanding submissions, end the serial filing of motions, allow Appellant and Appellee to make a record and present their respective arguments, and permit us to rule on all matters and state our reasoning, on the record, we scheduled a hearing and arranged for Appellant to participate by videoconference from SCI

---

[5] Specifically, in the appeal docketed at 2485 EDA 2016, this Court quashed Appellant's appeal from the trial court's July 15, 2016 order denying her petition to stay the Sheriff's sale of the property because the appeal was premature as the sale had not yet occurred. At docket 794 EDA 2017, Appellant appealed from the trial court's January 12, 2017 order denying another petition to stay the Sherriff's sale. This Court similarly quashed the appeal because an order denying a stay is not a final and appealable order.

> Muncy. Subsequently, Appellee filed objections to Appellant's untimely counterclaim and asked the Court to preclude Appellant from filing any additional motions or requests for relief in this case or any lawsuits pertaining to the subject mortgage or the sheriff sale.

Trial Ct. Op., 9/19/17, at 1-3.[6] Appellant's numerous filings, some of which were not included in the record transmitted to this Court, have resulted in a lengthy procedural history, which we reproduce in relevant part as follows.[7]

### Appellant's April and May 2017 Filings

As stated above, the sheriff's sale occurred on March 30, 2017; a third-party purchased Appellant's property. On April 21, 2017, prior to the delivery of the property's deed, the court docketed several of Appellant's pleadings:[8] (1) a motion to set aside the sheriff's sale under Pa.R.C.P. 3132;[9] (2) a motion

---

[6] Meanwhile, Appellant had also filed for bankruptcy, but the bankruptcy court permitted Appellee to proceed with foreclosure. **In re Bucano**, No. 4-15-bk-01587 (Bankr. M.D. Pa. Jan. 6, 2016) (order).

[7] The record transmitted to this Court spans 813 pages.

[8] The record does not consistently indicate when Appellant deposited her pleadings into the prison mailbox system. **See generally Thomas v. Elash**, 781 A.2d 170, 176 (Pa. Super. 2001) (holding that a legal document, including a legal document in a civil case, is deemed filed by an incarcerated *pro se* litigant on the date it is deposited into prison mail system). Thus, we reference the date the court docketed her pleadings.

[9] Pennsylvania Rule of Civil Procedure 3132 states: "Upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances."

to set aside the sheriff's sale on the basis of extraordinary relief; and (3) a request for a stay of the sale, which was titled an "Objection to Sheriff Determination Rule 3260."[10]   Appellant's filings raised numerous, and sometimes duplicative, arguments.  In relevant part, she asserted that the property's actual sale price bore no relation to the property's value and Appellee procured the sale by fraud.

The deed to the property was delivered on May 1, 2017.  On May 3, 2017, the court denied Appellant's April 21st request for a stay of the sale. On May 23, 2017, Appellee filed an answer to both of Appellant's April 21st motions to set aside the sheriff's sale.

On May 30, 2017, the court docketed (1) Appellant's "motion to praecipe the case for argument" on her motion to set aside the sheriff's sale, which did not specify which of the April 21, 2017 motions she was referencing, and (2) Appellant's "Argument to Set Aside Sheriff Sale."  Appellant's "Argument" raised several claims, including allegations that the foreclosure violated Act 6[11] and Act 91,[12] the court erred by not granting her request for a stay under

---

[10] Pennsylvania Rule of Civil Procedure 3260 sets forth an exemplar of an objection to a sheriff's determination of ownership of the property at issue.

[11] 41 P.S. §§ 101-605.  Act 6, as it is commonly referred to, is Pennsylvania's loan interest and protection law.  **See generally Generation Mortg. Co. v. Nguyen**, 138 A.3d 646, 649 n.2 (Pa. Super. 2016).

[12] 35 P.S. §§ 1680.401c-1680.412c.  "The purpose of Act 91 was to institute a program to avert extensive mortgage foreclosures and distress homes sales

Rule 3121,[13] the sheriff's sale was procured by fraud, and the sale price of the property was below its actual value.[14]

On June 12, 2017, the court denied Appellant's (1) two then-outstanding April 21st motions to set aside the sheriff's sale and (2) May 30th motion to praecipe the case for argument on her motion to set aside the sheriff's sale and "Argument to Set Aside Sheriff Sale." Order, 6/12/17, at 1-2. The court reasoned that Appellant "failed to recite any cognizable basis on which to challenge, much less set aside, the Sheriff's Sale of the subject property." *Id.* at 1. Further, according to the court, Appellant "improperly attempt[ed] to raise and relitigate issues that were or could have been decided long ago, prior to the date the foreclosure judgment became final, and that she ha[d] repeatedly attempted to raise on numerous occasions prior to the Sheriff Sale." *Id.* Appellant did not appeal the June 12, 2017 order.

_____

resulting from default caused by conditions beyond the control of homeowners, through emergency mortgage assistance payments." ***Beneficial Consumer Discount Co. v. Vukman***, 77 A.3d 547, 554 (Pa. 2013) (Saylor, J., concurring).

[13] Pennsylvania Rule of Civil Procedure 3121 sets forth the procedure for requesting a stay or setting aside the execution of a sheriff's sale of a property. ***See generally*** Pa.R.C.P. 3121.

[14] Although Appellant's May 30th "Argument to Set Aside Sheriff Sale," was filed after the deed was delivered on May 1st, because she alleged fraud, the trial court could consider her argument. ***See Garrison v. Erb***, 227 A.2d 848, 849 (Pa. 1967) (stating, "The only attacks possible after delivery of deed to the purchaser are those based on fraud which vitiates the transaction, or on lack of authority to make the sale").

## **Appellant's June 2017 Filings**

The court, on June 15, 2017, docketed Appellant's first motion to have the trial judge recuse himself. That same day, the court also docketed Appellant's motion to compel Appellee to produce documents regarding (1) her taxes, (2) homeowners' insurance, and (3) mortgage payment records. The docket also indicates that the court docketed Appellant's "Counterclaim Under Rule 1148, New Evidence, Filed," but the record does not contain this pleading.

On June 21, 2017, the court docketed Appellant's objections to the court's June 12, 2017 order that denied her April 21st motions and May 30th pleadings.[15] Appellant's objections reiterated many of her prior arguments, including the value of the property was greater than the actual sale price and that the judge was biased against her. Appellant's Objs. to Order Denying Appellant's Pet., 6/21/17, at 1-3.[16]

On June 23, 2017, Appellee filed an answer to Appellant's motion to compel and counterclaim, which reasoned that because there was a final judgment in the foreclosure action, Appellant's motion was barred by *res*

---

[15] Also on June 21st, the court docketed Appellant's petition to fix the fair market value of the property at issue under Pa.R.C.P. 3284.

[16] As set forth below, we construe her objections as a motion for reconsideration of the court's June 12, 2017 order.

*judicata* or claim preclusion. Appellee's Ans., 6/23/17, at 2 (unpaginated). Appellee's answer also requested the court to bar Appellant from filing future pleadings under Pa.R.C.P. 233.1.[17] Appellee reasoned that because Appellant was litigating issues previously resolved by the court, under Rule 233.1, she should be barred from litigating the mortgage foreclosure. Appellee's Ans., 6/23/17, at 4 (unpaginated). On June 28, 2017, the court docketed

_____

[17] Pennsylvania Rule of Civil Procedure 233.1 states:

> (a) Upon the commencement of any action filed by a *pro se* plaintiff in the court of common pleas, a defendant may file a motion to dismiss the action on the basis that
>
> > (1) the *pro se* plaintiff is alleging the same or related claims which the *pro se* plaintiff raised in a prior action against the same or related defendants, and
> >
> > (2) these claims have already been resolved pursuant to a written settlement agreement or a court proceeding.
>
> (b) The court may stay the action while the motion is pending.
>
> (c) Upon granting the motion and dismissing the action, the court may bar the *pro se* plaintiff from pursuing additional *pro se* litigation against the same or related defendants raising the same or related claims without leave of court.
>
> (d) The court may *sua sponte* dismiss an action that is filed in violation of a court order entered under subdivision (c).

Pa.R.C.P. 233.1.

Appellant's response to Appellee's June 23rd answer and request to bar her from filing future pleadings.[18]

On July 6, 2017, the court ordered a hearing to resolve the following pleadings. Specifically, Appellant's (1) June 15, 2017 motion to recuse, motion to compel, and counterclaim under Rule 1148; (2) June 21, 2017 petition to fix fair market value under Rule 3284; (3) June 21, 2017 objections to the court's June 12, 2017 order that denied her motions and pleadings to set aside the sheriff's sale; (4) June 28, 2017 response to Appellee's June 23rd answer and request to bar future filings by Appellant; and (5) June 28, 2017 "motion for stay of 'good cause.'" The order also provided that it would resolve Appellee's request to bar future filings and any other outstanding motions.[19]

At the August 21, 2017 hearing, Appellant participated via video conference. At the hearing, in addition to arguing the purported merits of her various filings, she asserted the judge should recuse himself because he ruled

_____

[18] That same day, the court docketed Appellant's "motion for stay of 'good cause.'" The motion is difficult to understand, but Appellant appears to be suggesting that the court impose a bond pending resolution of her challenges to the sheriff's sale. Appellant's Mot. for Stay of Good Cause, 6/28/17, at 1.

[19] On August 14, 2017, prior to the scheduled hearing, the court docketed Appellant's second motion to recuse the trial judge, which reiterated the arguments in her earlier June 15, 2017 motion to recuse and additionally contended the judge should recuse himself because he ruled against her in a separate action to enforce a post-nuptial agreement. Appellant's Mot. to Recuse, 8/14/17, at 1.

against her in her lawsuit against her ex-husband regarding the post-nuptial agreement. N.T., 8/21/17, at 9; *see also* Appellant's Mot. to Recuse, 8/14/17. At the conclusion of the hearing, the court ruled against Appellant for all of her outstanding motions, which was memorialized in an order docketed on August 23, 2017. Order, 8/23/17. Although the order did not specifically rule on Appellant's August 14th motion to recuse, the order provided as follows:

> The Court notes that, due to the number and nature of filings, there may be some individual matters raised by [Appellant] that are not specifically addressed in this Order. It is the intent of this Order to dispose of and deny all outstanding requests for relief filed by [Appellant] and discussed during today's proceeding.

*Id.* at 2 (unpaginated). The court also denied Appellee's motion under Pa.R.C.P. 233.1 to bar *pro se* Appellant from pursuing frivolous litigation. *Id.*

Appellant timely appealed and filed a non-court-ordered Pa.R.A.P. 1925(b) statement. The trial court prepared a responsive opinion, which noted that Appellant has inundated it with numerous pleadings collaterally attacking the default judgment in the 2014 mortgage foreclosure action. Trial Ct. Op., 9/19/17, at 2. The trial court also requested that this Court authorize it to

> summarily dismiss any filings submitted by Appellant that raise matters which have previously been decided on their merits and that Appellant be advised that neither this [c]ourt nor the Superior Court will entertain future filings or appeals that pertain to decisions that she could have timely appealed but did not, issues that were or could have been raised in the prior appeals that were dismissed or quashed, or matters that were or could have been raised in this appeal.

Trial Ct. Op., 9/19/17, at 4.

Appellant raises the following issues:[20]

1. [The trial court] erred when he refused to reopen Appellant's divorce agreement in the post-nuptial order to communicate with the bank.

2. [The trial court] erred when Appellant requested itemized breakdowns, and proof of records, proving those amounts, for not reviewing [A]ppellant's evidence submitted to [the trial court] that clearly proved the multitude of mathematical errors.

3. The [trial] court erred allowing [Appellee's] representatives to continuously commit fraud with false amounts owed that fluctuated and decreased when they needed it to.

4. The [trial] court erred when they did not inquire why [Appellee] overbilled Appellant for over eleven years, claiming escrow without evidence.

5. The [trial] court erred and violated Appellant's Act 6 and Act 91 rights when the court did not demand proof of accelerated late fees and charges.

6. The [trial] court erred denying to set aside sheriff sale and sign a bond and submit proof of [Appellee's] fair market value appraisal.

Appellant's Brief at i.[21]  Appellee did not cross-appeal from the court's order

denying its Pa.R.C.P. 233.1 motion.

_____

[20] Appellant did not include a statement of questions presented in her brief. Thus, we reproduce her argument headings.

[21] Appellant's table of contents was unpaginated.

For her first issue, Appellant contends that the trial court erred by not reopening the post-nuptial agreement between her and her ex-husband. Appellant argues that her ex-husband should have given her power of attorney in order to contact Appellee and cure the default. Appellant's Brief at 4, 6.[22]

Appellee responds that the trial court properly concluded that Appellant re-raised an argument that was fully litigated and adjudicated. As noted by Appellee and the trial court, Appellant raised identical arguments in her February 2015 petition to strike default judgment in the 2014 mortgage foreclosure action.

Whether collateral estoppel or the law of the case doctrine applies is a question of law and thus, we apply a *de novo* standard of review. **See Mariner Chestnut Partners, L.P. v. Lenfest**, 152 A.3d 265, 286 (Pa. Super. 2016); **In re Wilson**, 879 A.2d 199, 214 (Pa. Super. 2005). The "doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit." **Lenfest**, 152 A.3d at 286. "Collateral estoppel may be invoked to bar the relitigation of an issue alleged to have been determined in a prior action regardless of whether there is identity of the causes of action or of the parties in the two

---

[22] Appellant does not argue that Judge Mark should have recused himself because of his adverse ruling in the post-nuptial agreement lawsuit.

actions." 10 Standard Pa. Practice 2d § 65:69 (footnote to case citations omitted).

> In contrast, but in a similar vein:
>
> The law of the case doctrine expresses the practice of courts generally to refuse to reopen what has been decided. The doctrine is composed of a collection of rules that not only promote the goal of judicial economy but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end. . . .
>
> . . . [T]he considerations that underlie the doctrine also strongly weigh in favor of adherence by a trial judge to a decision by that same judge earlier in the case:
>
>> Law of the case doctrine saves both litigants and the courts from duplications of effort. If permitted to argue and brief the same issue repeatedly during the course of the same litigation, some litigants would be indefatigable in their efforts to persuade or to wear down a given judge in order to procure a favorable ruling. Such use of clients' finances, legal counsels' time and energy, and judicial resources is wasteful from a systemic perspective.
>
> . . . As we have stated, "Once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable and an appeal therefrom is successfully prosecuted." **Golden v. Dion & Rosenau**, 410 Pa. Super. 506, 600 A.2d 568, 570 (1991) (discussing rulings by different trial judges). As a general proposition, a court should not revisit questions it has already decided.

**Bienert v. Bienert**, 168 A.3d 248, 254 (Pa. Super. 2017) (some citations, quotation marks, ellipses, and brackets omitted). With respect to that general proposition, the Pennsylvania Supreme Court explained, "a later motion should not be entertained or granted when a motion **of the same kind** has

previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question." *Goldey v. Trustees of Univ. of Pa.*, 675 A.2d 264, 267 (Pa. 1996).

In the context of a default judgment, the Pennsylvania Supreme Court held, "[o]nce all direct appeals are exhausted from the entry of such a judgment, we long ago concluded that the judgment by default is *res judicata* and quite as conclusive as one rendered on a verdict after litigation insofar as a defaulting defendant is concerned." *Fox v. Gabler*, 626 A.2d 1141, 1143 (Pa. 1993) (citations omitted). "[T]he judgment is final and conclusive not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding but also as respects any other available matter which might have been presented to that end." *Id.* (citation omitted).

For example, in *Winpenny v. Winpenny*, 643 A.2d 677 (Pa. Super. 1994), the Court invoked the "law of the case" and *res judicata* doctrines to prevent a *pro se* litigant from abusing the court system. *Id.* at 679. In *sua sponte* assessing costs under Pa.R.A.P. 2744[23] against that *pro se* litigant, the Court noted:

---

[23] Pa.R.A.P. 2744 states:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
>
> > (1) a reasonable counsel fee and

> A party must raise all matters related to an issue at the first opportunity or be forever barred from raising them again. Even giving the highest consideration to the *pro se* party, there can be no doubt from the record that [the *pro se* litigant] has had every opportunity for appropriate hearings on the various points of which she now complains.

***Id.*** (citation and footnote omitted).

Here, both Appellee and the trial court have correctly contended that Appellant is attempting to re-raise an argument that was fully litigated and adjudicated: first, in her action to enforce the post-nuptial agreement against her husband, and second, in her February 2015 petition to strike the default judgment in the 2014 mortgage foreclosure action.[24] To the extent Appellant is relitigating her post-nuptial agreement in this mortgage foreclosure action, she is barred from raising it in this and future lawsuits. ***See generally Lenfest***, 152 A.3d at 286.

_____

> (2) damages for delay at the rate of 6% per annum in addition to legal interest,

> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

[24] As we noted above, Appellant repeated this argument in a subsequent April 6, 2015 petition to strike, which the court denied on April 9, 2015.

- 15 -

To the extent Appellant is raising this particular argument as a basis to challenge the default judgment or the order denying her petition to strike, the law of the case doctrine bars her from relitigating this issue, as she did not appeal the order denying her February 2015 (or April 6, 2015) petition to strike. **See Fox**, 626 A.2d at 1143; **Bienert**, 168 A.3d at 254.

Similar to the *pro se* litigant in **Winpenny**, because Appellant did not appeal from the order denying her petition to strike the default judgment, in which she had raised this argument, she cannot continue to relitigate it. **Cf. Winpenny**, 643 A.2d at 679. Thus, the trial court properly refused to grant relief.

Appellant's arguments in support of her second, third, and fourth issues essentially assail the amount in default and whether Appellee engaged in fraud. Appellant believes that she owed $5,770.95, and that the court could have facilitated a meeting with Appellee to avoid foreclosure. Appellant's Brief at 9-10. She maintains the court was obligated to "resolve the correct amount owed." **Id.** at 13. Appellant similarly asserts that Appellee's counsel committed fraud by lying to the bankruptcy court about the amount owed and the value of the property. **Id.** at 16-19. According to Appellant, Appellee improperly overbilled her and under a correct calculation, she was in default

by $5,691.51.[25]  *Id.* at 22.  Appellant does not articulate how this would void the judgment.

Here, without addressing the viability of Appellant's arguments, the time to raise them has long past.  As with Appellant's first issue, Appellant failed to appeal the order denying her petition to strike, which rendered the default judgment final and conclusive.  *See Fox*, 626 A.2d at 1143; *Bienert*, 168 A.3d at 254.

Even if Appellant's arguments were properly before this Court, we would hold she has not established entitlement to relief as she failed to establish how the judgment would be void.  *See generally Mother's Restaurant, Inc. v. Krystkiewicz*, 861 A.2d 327, 337 (Pa. Super. 2004) (*en banc*) (suggesting an argument that a judgment is void may be raised for the first time on appeal).  Solely based on the arguments she has raised, Appellant has not established entitlement to relief.

In support of her fifth issue, Appellant argues that Appellee violated Act 6.  Appellant's Brief at 30.[26]  For her sixth issue, Appellant contends the court

---

[25] Appellant, it appears, calculated two different amounts in default.

[26] In her list of issues, Appellant also asserted that the court erred by not finding in her favor on her Act 91 claim.  By not arguing Act 91 in her appellate brief, however, she has waived it on appeal.  *See Kituskie v. Corbman*, 682 A.2d 378, 383 (Pa. Super. 1996).  But even if Appellant had argued Act 91, as discussed *infra*, she failed to appeal the court's June 12, 2017 order denying her motions to set aside the sheriff's sale.

erred by not setting aside the execution because it did not comply with Rule 3121. *Id.* at 31.

As noted above, Appellant raised these arguments in her motions to set aside the sheriff's sale and "Argument to Set Aside Sheriff Sale," which the court had denied on June 12, 2017. Rather than appeal, Appellant, on June 21, 2017, elected to file "objections" to the court's June 12th order. The court, however, did not vacate its June 12th order or resolve Appellant's "objections" until August 21, 2017, more than thirty days after its June 12th order.

In *Oak Tree Condominium Ass'n v. Greene*, 133 A.3d 113 (Pa. Cmwlth. 2016), our Commonwealth Court addressed a similar situation.[27] In *Greene*, the trial court had denied the plaintiff's petition to set aside the sheriff's sale of the property. *Greene*, 133 A.3d at 115. The plaintiff filed a motion for reconsideration, which the trial court addressed after more than thirty days had elapsed from its initial order denying the petition to set aside. *Id.* The trial court thus held that because it did not explicitly grant the motion for reconsideration within thirty days, it had no jurisdiction to resolve the motion for reconsideration. *Id.* The plaintiff appealed but the Commonwealth Court agreed, holding, "a trial court relinquishes its ability to act once the 30–

---

[27] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 308 n.7 (Pa. Super. 2012).

day period has passed and a motion for reconsideration has not been expressly granted to toll the appeal period." ***Id.*** Thus, the ***Greene*** Court quashed the plaintiff's appeal because it failed to appeal the order denying its petition to set aside the sheriff's sale within thirty days. ***Id.*** at 117.

Instantly, like the plaintiff in ***Greene***, Appellant did not appeal the court's June 12, 2017 order denying her multiple motions to set aside the sheriff's sale. ***See Greene***, 113 A.3d at 115. Rather, similar to the ***Greene*** plaintiff's decision to file a motion for reconsideration, Appellant filed "objections," which were in the nature of a motion for reconsideration, to the court's order on June 21, 2017. ***See id.*** But, identical to the trial court in ***Greene***, the instant trial court did not rule on Appellant's objections until well after the thirty-day time period to appeal had elapsed. ***See id.***

Accordingly, we quash Appellant's appeal to the extent she challenges the court's June 12, 2017 order denying her motions to set aside the sheriff's sale. ***See id.***

Finally, the trial court has asked this Court for authorization to bar Appellant from filing any pleadings pertaining to long-resolved issues. We decline to respond to the trial court's request, as Rule 233.1 provides it with sufficient authority. As noted above, Appellee did not cross-appeal from the trial court's denial of its Rule 233.1 motion. Appellee is free to file, and the trial court is free to rule on, a motion to dismiss under Rule 233.1.

For these reasons, we affirm the court's order below in part and quash the appeal to the extent Appellant is appealing the court's June 12, 2017 orders denying her petition to set aside the sheriff's sale.

Appeal from the August 23, 2017 order quashed to the extent it resolved Appellant's fifth and sixth issues on appeal. The order is otherwise affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:3/20/18