J-S22033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL LAUSCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAN LING | : | |
| | : | |
| Appellant | : | No. 1694 MDA 2024 |

Appeal from the Order Entered October 30, 2024
In the Court of Common Pleas of Berks County Civil Division at No(s):
12 20957

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: SEPTEMBER 26, 2025**

Appellant, Shan Ling, appeals from the Qualified Domestic Relations

Order ("QDRO") entered in the Court of Common Pleas of Berks County.  We

affirm.

This Court previously provided the relevant background of the parties,

as follows:

> Husband [Michael Lausch] and Wife [Shan Ling] met in Shanghai
> and were married there in 2000. . . .  Husband and Wife
> subsequently moved to the United States, where their daughter
> was born in 2003.  In 2004, Husband purchased a family residence
> in his name in Berks County, Pennsylvania.
>
> Husband and Wife separated in 2012, and Husband filed for
> divorce that same year.  The court appointed a divorce master,
> who held hearings on October 16, 2017, March 16, 2018, and May
> 14, 2018.[]  The master filed his report and recommendation on
> August 28, 2018.  Wife filed several exceptions.  Both parties filed

_____

[*] Former Justice specially assigned to the Superior Court.

briefs, and the matter was argued on December 9, 2020. In the divorce decree entered May 21, 2021, the trial court sustained in part and denied in part Wife's exceptions.

*Lausch v. Ling*, 276 A.3d 221 (non-precedential decision) (Pa. Super. filed March 8, 2022) (affirming the lower court's divorce decree incorporating, *inter alia*, the equitable distribution of marital assets).

The present matter arose when Ms. Ling raised a discrete issue before the trial court in her June 26, 2024, "Petition for Enforcement of the Marital Transfer Order," in which she alleged Mr. Lausch had not complied with the order's requirement that he transfer $465,164.57 from his Campbell Soup Company-sponsored 401(k) retirement savings plan account to her Individual Retirement Account. The lower court issued upon Mr. Lausch a rule to show cause why it should not grant relief to Ms. Ling.

Through counsel, Mr. Lausch filed an answer explaining that, in 2021, he was prepared to transfer the 401(k) funds pursuant to the court's marital transfer order, but, before he could do so, Ms. Ling filed an appeal to this Court challenging the divorce decree with specific reference to the propriety of the marital transfer order and the equitable distribution of marital property incorporated therein. After this Court in *Lausch* rejected Ms. Ling's equitable distribution claims and affirmed the divorce decree, Ms. Ling exhausted her appeal options, upon which counsel for Mr. Lausch mailed to Ms. Ling a written correspondence dated July 23, 2023, asking for her account information to enable completion of the transfer of funds pursuant to the lower court's marital

transfer order.  Ms. Ling never responded to the request.  N.T., 10/30/24, at 2-4.

At the October 30, 2024, hearing on Ms. Ling's June 26, 2024, petition to enforce the marital transfer order, she acknowledged that she did not wish to sign the proposed QDRO authorizing the transfer of the agreed-upon amount of $465,164.57 despite her attorney's recommendation that she sign. She attempted to relitigate issues of asset valuation and the adequacy of the transfer amount that were either previously litigated and denied or never raised during marital property distribution proceedings and, therefore, waived. N.T. at 3-5.  Ms. Ling also raised non-specific, undeveloped concerns that the QDRO may not be of "professional" quality, and she otherwise raised indiscernible issues regarding Social Security that the lower court was unable to relate to the relevant issues before it.  N.T. at 5.

The lower court advised Ms. Ling that it had the authority to accept the property distribution scheme within the proposed QDRO without her approval. Nevertheless, Ms. Ling pressed her objection to calculating the amount of her 401(k) share based on the 2017 value of Mr. Lausch's 401(k) account instead of on the present value (as of the October 30, 2024, hearing).  N.T. at 8-9. The lower court responded that use of the 2017 valuation was appropriate because the parties had been separated since 2012, and it opined that, in any event, Ms. Ling had waived this issue when she did not raise it during previous lower court proceedings in which the 2021 marital transfer order incorporated the 2017 401(k) valuation or in her subsequent appeal to the Superior Court

addressing the fairness of the equitable distribution scheme. N.T. at 8-9. On this point, the notes of testimony reflect the following:

> Lower Court:     Well, what we're talking about is the issues that you're raising were issues that should have been raised, or were raised and denied, during the course of the hearings that took place before the Equitable Distribution Master, and then before me, and then before the [a]ppellate [c]ourt.
>
> [Ms. Ling]:     I understand that. I want to wait to –
>
> Lower Court:     But your claims were denied. So, it's over. You can't keep rehashing the same claims. This is what you are entitled to. That's what [counsel for Mr. Lausch] is saying.
>                  . . .
>
>                  You can't have a do-over. You can't repeat it. You already raised these issues, and they were denied. It's decided. It's over.

N.T. at 9, 10-11.

The lower court took a brief recess to await the arrival of Ms. Ling's court-appointed interpreter. When the interpreter arrived, the lower court reconvened and reiterated that all economic matters between the parties were previously litigated before the trial court and reviewed, on appeal, by the Superior Court, which affirmed the trial court order pertaining to the distribution of the marital estate. At this stage, the lower court emphasized, only the method by which Mr. Lausch would complete the transfer of $465,164.57 from his 401(k) account to Ms. Ling's IRA account remained at issue. N.T. at 14. As such, it instructed that under the terms of the governing

divorce decree, if the parties disputed over the method of distribution, then Mr. Lausch held the option to choose between payment of cash or by QDRO. N.T. at 14.

The lower court thus concluded that because the parties had failed to agree on the method of distribution, Husband was to choose a method. It observed:

> What we have here is no agreement[,] [a]nd since there is a dispute, the method of payment shall be Husband's option. He has chosen to use the QDRO. He has prepared the QDRO. I have reviewed the QDRO, which appears to be in order, which he has prepared and has paid for, and it's for the correct amount. So, I am signing the QDRO, and that will complete the matter for today."

N.T. at 14-15. This appeal followed.[1]

Initially, we note that Ms. Ling has failed to include in her *pro se* brief a statement of questions presented. Pursuant to Rule 2116, "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

Although Rule 2116 states that this Court will not consider a question that is not included in the statement of questions involved, this Court has held that "such a defect may be overlooked where an appellant's brief suggests the specific issue to be reviewed and appellant's failure does not impede our ability to address the merits of the issue." **Werner v. Werner**, 149 A.3d 338, 341

---

[1] On November 14, 2024, Ms. Ling timely filed her *pro se* appeal from the lower court's October 30, 2024, order accepting the QDRO as the method of distributing to wife her agreed-upon marital share of $465,164.57 from Mr. Lausch's 401(k) plan account.

(Pa. Super. 2016) (quoting **Bailey v. Storlazzi**, 729 A.2d 1206, 1210 (Pa. Super. 1999)) (cleaned up). **See also Lausch**, **supra** at *13. Ms. Ling raised the issue of the lower court's distribution of Mr. Lausch's 401(k) plan during the proceedings below, and the lower court addressed it and ruled against her. Therefore, because the issue is readily ascertainable, Ms. Ling preserved it below, and the trial court addressed it, the absence of a statement of questions involved does not impede our review in this instance, such that we decline to find this issue waived.

We begin with the following principles, which govern our review:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

**Busse v. Busse**, 921 A.2d 1248, 1257 (Pa. Super. 2007) (citation omitted).

> This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also

> aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017) (cleaned up).

*Lausch* at *2.

Preliminarily, we observe Ms. Ling's *pro se* brief is prolix, noncompliant with the briefing requirements outlined in the Pennsylvania Rules of Appellate Procedure, and, at times, difficult to follow. Nevertheless, she presents the crux of her argument most clearly at the outset, where she contends:

> To help my child complete their college education and escape financial hardship, I filed a petition, "Petition for Enforcement of the Marital Asset Transfer Order" . . . with the Berks County Court on June 26, 2024, requesting that the plaintiff transfer my marital asset share of $465,164.5 [sic], as determined in the finalized May 20, 2021 divorce judgment, in a form that allows it to be rolled over into my Roth IRA. Additionally, I submitted court evidence [] and an index table [] regarding the $600,000+ in fraudulent misappropriation and judicial errors from the 2017 hearing, seeking a freeze on the plaintiff's retirement funds— including 401(k), pension, and Roth IRA accounts—totaling $1.5 million, until these judgments are rectified.
>
> . . .
>
> The May 2021 divorce judgment was based on the marital assets assessed during the 2017 hearing. Apart from the $600,000+ in misappropriated marital assets due to fraudulent judgment errors, [Mr. Lausch's counsel's] proposal in 2023 to transfer marital assets came six years after the hearing, during which [] litigation [Mr. Lausch] had unlawfully retained the huge in [sic] appreciated marital assets belonging to me.
>
> . . .

> [The parties'] QDRO agreement is directly tied to the major fraudulent misappropriation and judicial errors in the divorce case *Lausch v. Ling, Superior Court of Pennsylvania*, 276 A.3d 221. The distortion of facts in the judgment led to prolonged litigation and criminal charges. To ensure my rightful claim to my share of the appreciated marital assets, I must overturn the QDRO order that violates my legal rights. Therefore, it is necessary to present evidence of the criminal fraud and abuse of discretion that occurred in this divorce case.

Brief for Appellant at 1, 2.

The lower court opines that "[t]his most recent chapter in the long and tortuous history of this case" presents nothing more than Ms. Ling's untimely attempt to revisit the lower court's equitable distribution of marital property, as she raises a substantive challenge that she could have raised years earlier. We agree.

Specifically, this Court reviewed Ms. Ling's previous challenge to the lower court's equitable distribution of marital assets, where she elected to focus on the marital property transfer order's denial of her request to increase her distribution percentage to 80% in favor of establishing, instead, a 60-40 percentage split in Wife's favor. *Lausch*, 276 A.3d 221 at *2. Ms. Ling argued that the lower court's equitable distribution order gave insufficient weight to "Wife's mental illness, the disparity in earning capacities and retirement funds, the disparity in opportunities to increase and acquire capital assets, Wife's not being awarded alimony, Wife's not being able to receive Social Security benefits through her employment, and Husband's dissipation of marital assets[.]" *Id.* at 3 (citing Ms. Ling's Brief, at 29).

In the case *sub judice*, Ms. Ling relies on essentially identical arguments to challenge the equitable distribution of Mr. Lausch's 401(k) plan, as she contends that the QDRO agreement is directly tied to the "major fraudulent misappropriation and judicial errors in the divorce case ***Lausch v. Ling, Superior Court of Pennsylvania***, 276 A.3d 221." Thus, on this point, the lower court discerns that Ms. Ling has waived this issue:

> [Ms. Ling] previously raised these issues before [the lower court] by filing exceptions from the Master's Report regarding Plaintiff's 410(k) plan with Campbell's Soup Company and we resolved those issues. She then appealed this case to the Superior Court but did not raise issues regarding the value of [Mr. Lausch's] retirement income. Thus, any further complaints by [Ms. Ling] on this matter are barred by law of the case doctrine.
>
> The law of the case doctrine expresses the practice of courts generally to refuse to reopen what has been decided. ***Bienert v. Bienert***, 168 A.3d 248 (Pa. Super. 2017). Under the law of the case doctrine once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable, and an appeal therefrom is successfully prosecuted. ***Id***.

Lower Court Opinion, 12/16/24, at 4.

The record reveals that the only aspect of the 401(k) distribution remaining in the post-appeal procedural history of this matter was to determine whether Ms. Ling would receive her agreed-upon share in cash or by QDRO. When the parties disagreed on this purely ministerial detail, the lower court appropriately referred to the governing divorce decree, which provided that Mr. Lausch shall, in the event of a disagreement, select the manner of distribution of Ms. Ling's 401(k) share. As Ms. Ling offers no

meaningful dispute regarding the manner of distribution, we deem her present appeal unavailing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/26/2025